830 So.2d 408 (2002)
STATE of Louisiana, Appellee,
v.
Cedric Charles O'NEAL, Appellant.
No. 36,431-KA.
Court of Appeal of Louisiana, Second Circuit.
October 23, 2002.
*409 Peggy J. Sullivan, Louisiana Appellate Project, for Appellant.
Mary L. Harried, Assistant Indigent Defender, Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Lea R. Hall, J. Thomas Butler, Assistant District Attorneys, for Appellee.
Before STEWART, GASKINS and HARRISON (Pro Tempore), JJ.
*410 GASKINS, J.
The defendant, Cedric Charles O'Neal, was convicted of vehicular homicide. The state charged him as a multiple offender. The defendant was found to be a third felony habitual offender and was accordingly sentenced to life in prison without benefit of parole, probation, or suspension of sentence. On the original appeal of this case, we affirmed the conviction and the defendant's adjudication as a third felony offender. However, we found that the trial court did not properly consider the defendant's motion for a downward deviation from the mandatory multiple offender sentence. We vacated the sentence and remanded the case for resentencing. Following the appropriate hearing, the court again imposed the mandatory sentence of life imprisonment. The defendant now appeals his sentence. We affirm.

FACTS
The facts of this case are fully set forth in the original opinion. See State v. O'Neal, 34,814 (La.App.2d Cir.10/12/01), 795 So.2d 1292. On October 17, 1998, a football game was held between Grambling and the University of Arkansas at Pine Bluff at Fairground Stadium in Shreveport. The defendant attended a tailgate party outside the stadium. At about 9:00 p.m., the defendant borrowed a car to get something to eat. Around that time, Sandra Lewis and Robin Barrett were leaving the game. As the two women were attempting to cross Greenwood Road, the defendant hit them. Ms. Lewis sustained leg injuries, but survived. Ms. Barrett sustained leg, head and chest injuries and died a short time later. It was determined that the defendant's blood alcohol content shortly after the accident was .112% and a urine sample showed the presence of marijuana in his system.
The defendant had two prior felony convictions. He pled guilty in 1993 to possession of crack cocaine. He had previously been charged with simple burglary of an automobile, but pled guilty to a reduced charge of simple burglary.
The defendant was tried by a jury and convicted as charged of vehicular homicide, a violation of La. R.S. 14:32.1. The state then filed a third felony habitual offender bill of information against the defendant. The defendant pled not guilty to the habitual offender bill of information and filed a motion to deviate from the mandatory third habitual offender sentence of life imprisonment, claiming it was unconstitutionally excessive. He also filed a motion for a sentencing hearing. The trial court found the defendant to be a third felony offender and denied the motions for deviation from the statutorily mandated sentence. The defendant was ordered to serve the remainder of his natural life in prison, without benefit of parole, probation, or suspension of sentence.
On appeal, this court affirmed the defendant's conviction for vehicular homicide and his adjudication as a third felony offender. However, we found that the trial court did not sufficiently consider the defendant's challenge to his life sentence. We noted that there were aggravating and mitigating factors that the court should have considered in determining whether the defendant's life sentence was excessive. Therefore, we vacated the defendant's sentence and remanded the case to the trial court for reconsideration of whether the mandatory life sentence is constitutionally excessive for this defendant.
On February 12, 2002, the trial court held a resentencing hearing. The defendant presented numerous witnesses to show that he had made an effort to reform while incarcerated. Dr. John Hoffman, *411 administrator of Bossier Parish Community College, testified that he teaches a survival skills class at Caddo Correctional Center (CCC). He said that the defendant took the class and expressed remorse for the victim's family.
Dr. Thomas Cole Flournoy, director of mental health services at CCC, testified concerning the defendant's participation in various help groups and stated that the defendant had made a positive change and had learned to better relate to others.
Thomas A. Johnston, a mental health counselor at CCC, testified that he thinks the defendant understands the gravity and the consequences of his actions and that the defendant was cooperative.
David Boone, a Caddo sheriff's deputy at CCC and the programs department manager, stated that the defendant was in the therapeutic housing unit for substance abusers, that he went to therapy four days per week, and that he became a facilitator in a life skills group. The defendant also spoke to tour groups.
James Ott and Adolphus Collins, deputies at CCC, testified at the prior sentencing hearing. The parties agreed to include their testimony from that hearing. They stated that the defendant was not a behavioral problem.
The defendant's girlfriend, Latoria Cosby, stated that the defendant is a different person than the one who committed this crime. Although she claimed to have known the defendant most of her life, she was not familiar with his prior convictions. She stated that the present offense was an accident and the defendant deserves another chance.
Annie O'Neal, the defendant's mother, testified as to her son's good character. She outlined several jobs that the defendant had held and claimed that he helped take care of a neighborhood child that was not his biological son. Ms. O'Neal did not know about the defendant's criminal record and stated that she never knew her son to be a drinker.
The defendant acknowledged that he had been convicted of possession of cocaine at age 17, simple burglary at 18 and the present offense at 24. He claimed that the possession of cocaine conviction occurred because he intended to trade the cocaine for oral sex. He stated that he did so because he was young and inexperienced. As to the simple burglary conviction, he testified that he broke into a car and took a camera and a tangerine. He said that this was not as bad as if he had taken the entire car or the motor. He pointed out that several years had passed between his second and third convictions, arguing that this showed that he was trying to better himself.
The defendant claimed to be remorseful for the present offense and pointed out that he is not a violent offender. Although he acknowledged that he was legally intoxicated when the present offense occurred, he did not think he was drunk. The defendant also argued that he swerved to avoid Ms. Lewis and denied that he hit her with the car.
Vernice Douglas and Jean Barrett Jones, the victim's mother and sister, testified regarding the impact on their family caused by the loss of Ms. Barrett. Ms. Jones stated that she wanted the defendant to pay for killing her sister.
The trial court denied the defendant's motion to deviate from the mandatory life sentence. According to the trial court, the defendant failed to show that he is exceptional, justifying a downward deviation in this case. The court stated that the defendant had not shown that he is a victim of the legislature's failure to assign sentences meaningfully tailored to the culpability of *412 the offender, the gravity of the offense, and the circumstances of the case. The court also found that the life sentence in this case was not constitutionally excessive. The court noted that it considered all the surrounding circumstances and all relevant mitigating factors as well as "any and all evidence presented." The defendant was resentenced to serve the required term under the habitual offender statute. The defendant then filed a motion to reconsider sentence which was denied by the trial court. The defendant appealed. He contends that the sentence imposed, although mandatory, was constitutionally excessive considering the facts and circumstances of the case and the background of the defendant. The defendant also argues that the trial court erred in denying his motion to reconsider his sentence.

DISCUSSION
Under the habitual offender statute, the sentence imposed upon the defendant was statutorily mandated by La. R.S. 15:529.1(A)(2)(b)(ii), which provided, in pertinent part, that if the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then, if the third felony or either of the two prior felonies is a crime punishable by imprisonment for more than 12 years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.[1] The defendant was previously convicted of possession of cocaine and simple burglary and was adjudicated a third felony offender. The penalty for his present conviction, vehicular homicide, includes imprisonment, with or without hard labor for not less than two years nor more than 20 years. At least one year of the sentence must be imposed without benefit of parole, probation, or suspension of sentence. Therefore, because the penalty for vehicular homicide includes imprisonment for more than 12 years, under the habitual offender statute, the applicable sentence is life imprisonment without benefit of parole, probation, or suspension of sentence.
The definition of criminal conduct and the provisions for penalties for such conduct is a purely legislative function. State v. Heard, 36,191 (La.App.2d Cir.7/17/02), 823 So.2d 454. Pursuant to this function, the legislature has enacted the habitual offender statute, which has been held to be constitutional. Thus, the mandatory life sentence imposed by La. R.S. 15:529.1 is presumptively constitutional and should be accorded great deference by the judiciary. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672; State v. Lindsey, 99-3302, 99-3256 (La.10/17/00), 770 So.2d 339, cert. denied, 532 U.S. 1010, 121 S.Ct. 1739, 149 L.Ed.2d 663 (2001).
Courts have the power to declare a sentence excessive under La. Const. art. 1, § 20, even though it falls within the statutory limits provided by the legislature. State v. Johnson, supra. A sentencing judge must always start with the presumption that a mandatory minimum sentence under the habitual offender statute is constitutional. A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it that would rebut this presumption of constitutionality. State v. Johnson, supra. Although a mandatory sentence may be found constitutionally excessive, the supreme court has made it clear that such a finding should be rare, not commonplace. State v. Heard, supra.
*413 To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that he is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. State v. Johnson, supra; State v. Lindsey, supra.
A trial judge may not rely solely upon the nonviolent nature of the instant crime or of past crimes as evidence which justifies rebutting the presumption of constitutionality. While a defendant's record of nonviolent offenses may play a role in a sentencing judge's determination that a minimum sentence is too long, it cannot be the only reason for declaring such a sentence excessive. State v. Johnson, supra.
A trial court must keep in mind the goals of the statute, which are to deter and punish recidivism. The sentencing court's role is not to question the wisdom of the legislature in requiring enhanced punishments for multiple offenders, but rather to determine whether the particular defendant before it has proven that the minimum sentence is so excessive in his case that it violates Louisiana's constitution. State v. Johnson, supra; State v. Lindsey, supra.
Finally, if a sentencing judge finds clear and convincing evidence which justifies a downward departure from the minimum sentence under the habitual offender statute, he is not free to sentence a defendant to whatever sentence he feels is appropriate under the circumstances, but must instead sentence the defendant to the longest sentence which is not constitutionally excessive. State v. Johnson, supra; State v. Lindsey, supra; State v. Heard, supra; State v. Gay, 34,371 (La.App.2d Cir.4/4/01), 784 So.2d 714.
The record supports the trial court's conclusion that the defendant did not meet his burden of showing that the sentence imposed was constitutionally excessive in this case. The defendant had a prior drug conviction and a conviction for burglary. At the time of the commission of the present offense, the defendant was 24 years old. He committed three felonies between the ages of 17 and 24. The defendant's argument that he had a significant portion of crime-free existence is not supported by the record.
The defendant has exhibited a propensity to commit criminal offenses. In the present case, he chose to drink, smoke marijuana and then drive a vehicle into two pedestrians who were attempting to cross a street. The defendant's behavior cost the life of Robin Barrett. Although the defendant presented testimony that he helped his family when he was not in jail, and that he has made an effort to cooperate with officials during his current incarceration, he has simply failed to show by clear and convincing evidence that he is exceptional, justifying a downward deviation in the mandatory sentence applicable in this case.
The defendant directs attention to the fact that none of his three convictions is for a violent offense. As discussed above, a trial judge may not rely solely upon the nonviolent nature of the present offense or of past offenses to justify rebutting the presumption of constitutionality. While the defendant's prior offenses were not classified as crimes of violence under the Louisiana statutory scheme, his present offense resulted in the loss of a human life.
The defendant notes that following the commission of the instant offense, the legislature amended La. R.S. 15:529.1. Were the defendant to be sentenced under the amended habitual offender law, he would be subject to a penalty of not less than *414 two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction. See Acts 2001, No. 403 § 2. The amendment became effective June 15, 2001, with the legislature specifying that the provisions shall have only prospective effect. See also State v. Sugasti, XXXX-XXXX (La.6/21/02), 820 So.2d 518, and State v. Melancon, XXXX-XXXX (La. App. 4th Cir.8/21/02), 826 So.2d 633.
Although the defendant in the present case recognizes that the amendment to La. R.S. 15:529.1 is to be applied prospectively only, he argues that the change in the law is a tacit admission that a life sentence under the circumstances of this case is excessive. The defendant points out that under the habitual offender statute, his penalty is as severe as if he had intentionally killed the victim.
The amendment to La. R.S. 15:529.1 is to be applied prospectively. The trial court considered all the circumstances in this case and properly found no reason to deviate from the mandatory sentence. The defendant has not shown that the sentence imposed is excessive in this case. The sentence was tailored to the defendant's culpability, the gravity of the offense, and the circumstances of this case. The defendant's arguments to the contrary are rejected.

CONCLUSION
For the reasons stated above, we affirm the sentence of the defendant, Cedric Charles O'Neal, to serve life in prison without benefit of parole, probation, or suspension of sentence, following his conviction for vehicular homicide and his adjudication as a third felony offender.
AFFIRMED.
NOTES
[1] This provision was amended by Acts 2001, No. 403 § 2, as will be discussed below.