JOY COSSICH LOBRANO, Judge.
11 The defendant, Sullivan Williams, was charged with armed robbery, a violation of La. R.S. 14:64. Following a trial, the jury returned a verdict of guilty of simple robbery, a violation of La. R.S. 14:65. The trial court sentenced the defendant to serve five years in the Louisiana Department of Corrections, at hard labor without the benefit of probation, parole or suspension of sentence, to run concurrent with the sentence he was serving at that time. The defendant appeals his conviction and sentence.

STATEMENT OF FACTS

Candace Washington and the defendant lived in her apartment located at 10151 Curran Boulevard for approximately five months before the alleged robbery occurred. On April 4, 2010, the defendant was driving Ms. Washington’s car, and he *107 picked her up from work. They argued on the way home because Ms. Washington was late meeting the defendant. They arrived home near midnight, and the defendant asked to have the keys to Ms. Washington’s car. She told him no because she had to be at work the next morning at 6:00 a.m., and he became angry. The defendant went downstairs, while Ms. Washington remained at the top of the stairs. He returned with a knife from the kitchen and approached her at the 1¡¡top of the stairs. The defendant told her to give him the keys before he became violent. She complied, and he said that he would be back.
After the defendant failed to return on April 5th or 6th; Ms. Washington called the police. New Orleans Police Department (NOPD) Officer Monica McLauren responded to the call, took Ms. Washington’s statement and had her sign an auto theft affidavit. Officer McLauren then obtained an arrest warrant for the defendant. Ms. Washington stated that she had to leave her apartment unlocked whenever she left because the defendant also had her apartment key.
On April 8th, Ms. Washington learned that her car had been towed, and the following day her friend took her to the lot where it had been towed so that she could recover her car. Once she retrieved her car, Ms. Washington decided not to sleep at her apartment again because she was afraid of the defendant and wanted to end their relationship.
On Saturday, April 10th, Ms. Washington returned to her apartment to retrieve her belongings and found the door to the apartment locked. Because she did not have her key, Ms. Washington knocked, and the defendant answered the door. She told him that their relationship was over and that he needed to remove his things from the apartment. The defendant disagreed and wanted to talk; they talked for approximately one hour.[1] Eventually her cousin notified the police; NOPD Officer Norman was the first officer to arrive. Officer McLauren also came; when she arrived, she observed Ms. Washington loading furniture into her car. The defendant was talking to Officer Norman near the stairwell. Officer McLauren overheard the defendant give his name as Byron Johnson.[2] Recognizing |shis name from her earlier interview with Ms. Washington, Officer McLauren immediately handcuffed the defendant and read him his Miranda rights. He was taken to the 7th District Police Station, where he began venting. The officer heard the defendant say, “that’s why bitches are getting killed now. I’m going to get my people to take care of that.”
The knife that was allegedly used by the defendant the night of April 4th was never shown to the police, because, according to Ms. Washington, the police had never asked to see the knife. She also stated that she only took from her apartment the things that she needed; everything else was thrown away including the knife used by the defendant.

ERRORS PATENT AND ASSIGNMENT OF ERROR 4

A review of the record for errors patent shows that the district court erred by imposing the defendant’s sentence under La. R.S. 14:65 without benefit of parole, probation or suspension of sentence. *108 The defendant urges this same error as part of his fourth assignment of error, and the State concedes that the district court erred by restricting benefits. Thus, the defendant’s sentence shall be amended to delete the prohibition against benefits.
No other error patent was found.

ASSIGNMENT OF ERROR 3

By this assignment of error, the defendant asserts that the evidence was insufficient to support his conviction for simple burglary. When issues are raised on appeal as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Hearold, 603 So.2d 731, 734 (La.1992); State v. Marcantel, 2000-1629, p. 8 (La.4/3/02), 815 So.2d 50, 55. Therefore, this assignment of error will be considered first.
The standard for reviewing a claim of insufficient evidence is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found all of the essential elements of the offense proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The reviewing court is to consider the record as a whole and not just evidence most favorable to the prosecution; and if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld. State v. Mussall, 523 So.2d 1305 (La.1988). Additionally, the reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. Id. The trier of fact’s determination of credibility is not to be disturbed on appeal absent an abuse of discretion. State v. Cashen, 544 So.2d 1268 (La.App. 4 Cir.1989).
In order to convict the defendant of simple robbery, the State had to prove that he did the following: (1) took something of value (2) belonging to another (3) from the person of another (4) by use of force or intimidation. State v. Florant, 602 So.2d 338, 340 (La.App. 4 Cir.1992).
In his brief, the defendant argues that the State faded to show that he was guilty of simple robbery because there was no “taking” as he shared the car with Ms. Washington while they lived together for five months. He also urges that only the keys were under Ms. Washington’s immediate control and that no evidence was presented to show that he used force or intimidation to obtain the keys.
Testimony at trial showed that the defendant had no ownership interest in the car. Although Ms. Washington may have consented to the defendant’s use of |sher car, the jurisprudence makes clear, consent or permission can be limited or revoked after having been granted. For example, in State v. White, 2011-0208 (La.App. 4 Cir. 9/28/11), 74 So.3d 748, the defendant (Mr. White) lived with the victim for seven years in her home. Despite having the victim’s consent to use her older vehicle, Mr. White did not have her consent to use her newer Nissan Armada. He drove the Armada one night, got into an accident, and left the Armada on the side of the road. This court upheld Mr. White’s conviction for unauthorized use of a motor vehicle, noting that the victim unequivocally stated that Mr. White did not have permission to drive the Armada. Likewise, in State v. Colbert, 04-538 (La.App. 5 Cir. 11/30/04), 889 So.2d 1128, Mr. Colbert was the boyfriend of the owner of the vehicle, and he had been doing some repairs on the vehicle. One morning, the victim awoke and discovered Mr. Colbert and her vehicle were gone. Two days later, Mr. Colbert called, and the victim *109 demanded that he return her vehicle. She ultimately filed a police report; she told the officer who took the report that she had delayed calling the police for a few days because she assumed Mr. Colbert had borrowed her car to go visit a friend. The court affirmed Mr. Colbert’s conviction for unauthorized use of a motor vehicle, finding that a rational trier of fact could conclude that he took the victim’s vehicle for an extended period of time without her consent.
Here, Ms. Washington revoked her consent on the night of April 4, 2010, when she refused to give the defendant her car keys because she had to be at work the next morning. She certainly did not give him permission to use the car for an extended period of time. Ms. Washington asked him to please return.
Though the defendant argues that only the keys to the car were under Ms. Washington’s immediate control, it was not necessary for her to be in physical | (¡possession of her car for a “taking” to have occurred. See State v. Verret, 174 La. 1059, 142 So. 688 (La.1932), (where the court found that a taking had occurred when robbers removed money from a box in the bedroom while the family was in the dining room). Notably, Ms. Washington would have remained in possession of the vehicle had she not felt forced or intimidated to give the keys to the defendant. The jury apparently believed that Ms. Washington was forced or intimidated into relinquishing her car keys as evidenced by its verdict, and this credibility determination is not contrary to the evidence. Thus, viewing the evidence in the light most favorable to the prosecution, the evidence was sufficient to support the defendant’s conviction for simple robbery. This assignment of error is without merit.

ASSIGNMENT OF ERROR 1

In the first assignment of error, the defendant asserts that the district court improperly limited the scope of voir dire.
The record reflects that one of the jury-panels was questioned as to whether they, a family member, or close friend was a victim of domestic violence or had any experience with domestic violence, and none of the potential jurors raised their hands. Defense counsel then asked if the jurors believed that a woman must be telling the truth if she has the courage to come forward to report that she was a victim of domestic violence. The State objected to this question because the defendant was not charged with domestic violence, and the objection was sustained.
The Supreme Court set forth the standard for the review of a claim that voir dire was unlawfully limited:
|7La. Const, art. I, § 17 guarantees a defendant full voir dire examination of prospective jurors and the right to challenge jurors peremptorily. The purpose of voir dire is to determine qualifications of prospective jurors by testing their competency and impartiality in order to discover bases for challenges for cause and for the intelligent exercise of peremptory challenges. State v. Hall, 616 So.2d 664, 668 (La.1993). Nonetheless, the scope of examination rests within the sound discretion of the trial court, and its ruling will not be disturbed absent clear abuse. La.Code Crim. Proc. art. 786; Hall, 616 So.2d at 669. In determining whether the trial court afforded a sufficiently wide latitude to the defendant, the entire voir dire examination must be considered. Id.
State v. Holmes, 2006-2998, p. 55 (La.12/2/08), 5 So.3d 42, 79-80. See also State v. Ancar, 508 So.2d 943 (La.App. 4 *110 Cir.1987), wherein this court stated that a trial court may not curtail the defendant’s right to ask non-repetitious voir dire questions that “reasonably explore the juror’s potential prejudices, predispositions or misunderstandings relevant to the central issues of the particular case.” This court also noted that a court may limit voir dire “as long as the limitation is not so restrictive as to deprive defense counsel of a reasonable opportunity to probe to determine a basis for challenge for cause and for the intelligent exercise of peremptory challenges.” Id. In Holmes, the Court found that the trial court did not unduly limit defense counsel’s questioning during voir dire concerning the effects of fetal alcohol syndrome because counsel was allowed to question the prospective jurors concerning their ability to consider the syndrome as a mitigating factor. Likewise, in Anear, this court found that the trial court had not unduly limited voir dire, rejecting the defendant’s claims that he was not allowed to rehabilitate a prospective juror and that he was not allowed to delve into personal information concerning the prospective jurors, personal information that the state did not have.
|sHere, the defendant urges that the district court prevented him from exploring the prospective jurors’ pertinent biases about domestic violence, citing State v. Mickey, 626 So.2d 24 (La.App. 1 Cir.1993). In Mickey, the court found that the trial court abused its discretion by restricting the scope of voir dire by not allowing defense counsel, in a trial for distribution of cocaine, to question potential jurors about the presence of drugs among their family and friends.
It is undisputed that Ms. Washington and the defendant were living together in the same residence at the time of the instant offense. Although the defendant was charged with armed robbery, the offense constituted domestic abuse to a family or household member as defined in La. R.S. 46:2132(3) and (4) of the Protection From Family Violence Act.[3] Nonetheless, we find the trial court’s ruling limiting voir dire did not prejudice the defendant in this case. The trial court permitted the defense counsel to question the prospective jurors as to whether they, a family member, or close friend was a victim of domestic violence or had any experience with domestic violence, and none of the jurors responded affirmatively. Considering that and the fact that other than the arguments that ensued the night of April 4, 2010, there was no evidence presented at trial that Ms. Washington and the defendant had other incidents of domestic abuse. This assignment of error is without merit.

ASSIGNMENT OF ERROR 2

By this assignment of error, the defendant urges that he was denied his constitutional right to due process of law when he was convicted by a non-unanimous jury verdict.
loThe record reflects that the defendant filed a motion to declare unconstitutional the non-unanimous jury verdict provisions of either La. Const, art. I, § 17(A) or La.C.Cr.P. art. 782(A). The motion was denied by the district court. However, nothing in the appeal record shows that the verdict rendered in this case was non-unanimous. The trial transcript does not reflect that the jury was polled, and no polling slips are contained in the record.[4] The only reference to a 10-2 jury verdict *111 was prior to sentencing when defense counsel argued the motions for new trial and for post-verdict judgment of acquittal. Notably, the State has not objected to the defendant’s contention that the verdict was non-unanimous. Assuming that the defendant is entitled to raise the issue on appeal, there is no merit to his claim.
In State v. Boudreaux, 2008-1504 (La.App. 4 Cir. 9/29/10), 48 So.3d 1144, writ denied, 2010-2434 (La.4/8/11), 61 So.3d 682, this Court noted:
In State v. Bertrand, 2008-2215 (La.3/17/09), 6 So.3d 738, the trial court found that La.C.Cr.P. art. 782(A) violated the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, relative to the number of jurors needed to concur to render a verdict in cases in which punishment is necessarily confinement at hard labor, the same issue raised by the defendant in the instant case. On direct appeal by the State, the Louisiana Supreme Court reversed, stating in its conclusion:
Due to this Court’s prior determinations that Article 782 withstands constitutional scrutiny, and because we are not presumptuous enough to suppose, upon mere speculation, that the United States Supreme Court’s still valid determination that non-unanimous 12 person jury verdicts are constitutional may someday be overturned, we find that the trial court erred in ruling that Article 782 violated the Fifth, Sixth, and Fourteenth Amendments. With respect to that ruling, it should go without saying that a trial judge is not at liberty to ignore the controlling | jurisprudence of superior courts. Bertrand, 2008-2215, p. 8, 6 So.3d at 743.
This Court cited and relied on Bertrand in State v. Barbour, 2009-1258 (La.App. 4 Cir. 3/24/10), 35 So.3d 1142, to reject the argument that the trial court had erred in denying the defendant’s motion to declare La.C.Cr.P. art. 782(A) unconstitutional as violative of the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution.
As stated by the Louisiana Supreme Court in Bertrand, under current jurisprudence from the U.S. Supreme Court, non-unanimous twelve-person jury verdicts are constitutional, and La.C.Cr.P. art. 782(A) is constitutional.
Boudreaux, 2008-1504, pp. 38-39, 48 So.3d at 1165.
This assignment of error is without merit.

ASSIGNMENT OF ERROR 4

In addition to arguing that the district court erroneously restricted parole eligibility, as was discussed in the errors patent review, the defendant argues in the final assignment of error that his sentence is excessive.
Article I, Section 20 of the Louisiana Constitution of 1974 prohibits the imposition of excessive punishment. La. Const. Art. I § 20; State v. Landry, 2003-1671 (La.App. 4 Cir. 3/31/04), 871 So.2d 1235, 1239-1240. A sentence may violate a defendant’s constitutional right against excessive punishment even if it is within the statutory limit. State v. Dorthey, 623 So.2d 1276, 1280 (La.1993). A sentence within the statutory limit is constitutionally excessive if it is grossly out of proportion to the severity of the crime or is nothing more than the purposeless imposition of pain and suffering. Landry, supra at 1239-1240, citing State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 676.
Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.C.Cr.P. art. 894.1 *112 and whether the sentence is warranted in light of the particular circumstances |uof the case. State v. Black, 98-0457, p. 8 (La.App. 4 Cir. 3/22/00), 757 So.2d 887, 892. If adequate compliance with Article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case. State v. Caston, 477 So.2d 868, 871 (La.App. 4 Cir.1985). The reviewing court must also keep in mind that maximum sentences should be reserved for the most egregious violators of the offense charged. State v. Quebedeaux, 424 So.2d 1009, 1014 (La.1982). The trial court has great discretion in sentencing within the statutory limits. State v. Trahan, 425 So.2d 1222 (La.1983). The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La.C.Cr.P. art. 881.4(D).
The offense of simple robbery is punishable by imprisonment for not more than seven years with or without hard labor. La. R.S. 14:65. Here, the defendant received a five-year sentence at hard labor.
Before sentencing the defendant, the district court considered letters written by his father, aunt, and a former employer. All three persons acknowledged the defendant’s addiction to drugs and implored the court to place him in a drug rehabilitation program rather than prison.[5] The court then recounted the facts, noting that the offense was a violent crime in which the defendant threatened the victim with a knife. Thus, we find that the district court adequately complied with La.C.Cr.P. art. 894.1.
In addition, we find the record supports the sentence imposed. Though the jury returned a lesser verdict, the jury apparently believed that the defendant used | l2force or intimidation to obtain the keys from Ms. Washington. Also, the record indicates the defendant is a multiple offender.
In State v. Capano, 466 So.2d 649 (La.App. 5 Cir.1985), the court imposed on the defendant the maximum seven year sentence on his conviction for simple robbery where the defendant, who was sixteen at the time of the offense, had an extensive juvenile record and the pre-sentence investigation indicated that he committed crimes on a regular basis and that he would likely commit another crime if not committed to an institution for an extensive period of time.
When compared to Capano, the defendant’s five-year sentence that was imposed under similar circumstances is not excessive. As the multiple bill of information reflects, the defendant has at least three prior convictions, including convictions for distribution of marijuana, possession of cocaine, and unauthorized use of a motor vehicle. In light of the defendant’s past criminal history and Ms. Washington’s testimony that he brandished a knife during the altercation, we cannot say the district court abused its discretion in sentencing the defendant to five years at hard labor. This assignment of error is without merit.

DECREE

Accordingly, for the reasons herein, we affirm the defendant’s conviction, and amend his sentence to delete the restriction of benefits, and as amended, affirm the sentence. The district court is hereby ordered to provide the Louisiana Department of Corrections with a new commitment order reflecting the amended sentence.
*113 AMENDED AND, AS AMENDED, AFFIRMED

. During that time, Ms. Washington attempted to call someone, who had earlier tried to serve an arrest warrant on the defendant. This person informed her that he was off that day and that she could call 911.

. Ms. Washington said that the defendant used this name whenever the police were involved.

. La. R.S. 46:2131, et seq.

. In State v. Collins, 2010-1181 (La.App. 4 Cir. 3/23/11), 62 So.3d 268, this court found that the defendant lacked standing to raise the issue because the jury was not polled, and the record did not reflect whether the jury rendered a non-unanimous verdict in the case.

. At the request of counsel, the trial court recommended the defendant for any educational and drag rehabilitation programs that may be available to him in prison.