ROLAND L. BELSOME, Judge.
|TOn November 16, 2010, the defendant, Sullivan Williams, was charged with armed robbery. He was tried by a jury and found guilty of the lesser-included offense of simple robbery, a violation of La. R.S. 14:65. On July 6, 2011, defendant was sentenced to serve five years in the custody of the Louisiana Department of Corree- *109 tions, at hard labor without the benefit of probation, parole or suspension of sentence, to run concurrently with the sentence he was serving at that time. The State subsequently filed a multiple offender bill of information identifying three predicate felony convictions: 1) a 2007 conviction for unauthorized use of a motor vehicle in Baton Rouge, Louisiana; 2) a 2006 conviction for possession of cocaine from Harris County, Texas; and 3) a 1998 conviction for distribution of marijuana from New Orleans, Louisiana.
On appeal, Mr. Williams’? conviction was affirmed and his sentence was amended to delete the restriction of benefits. State v. Williams, 2011-1547 (La.App. 4 Cir. 9/26/12), 101 So.3d 104, writ denied, 2012-2252 (La.4/1/13), 110 So.3d 575.
A multiple bill hearing was held and the trial court adjudicated the defendant to be a third felony offender. The trial court found that the State failed to establish lathe predicate felony conviction from Texas. The State objected to the trial court’s ruling and timely sought supervisory review of the ruling, and defendant filed a brief in opposition. This Court granted the State’s writ application, set aside Mr. Williams’ adjudication as a third felony offender, and found him to be a quadruple offender. The case was remanded for re-sentencing. State v. Williams, unpub., 2013-0572 (La.App. 4 Cir. 9/23/13).
Prior to sentencing, the defendant filed a motion for downward departure from the statutory minimum sentence. In support of his motion, the defendant attached nearly twenty certificates of completion from numerous adult self-help programs that he had completed while incarcerated at Dixon Correctional Facility. Several family members, including Mr. Williams’ parents, grandmother, aunt and uncle, appeared on his behalf at the hearing. It was noted that Mr. Williams’ aunt and uncle had agreed to provide him with employment in their landscaping business upon his release from prison.
In arguing for a reduced sentence, counsel noted that Mr. Williams had successfully completed the Blue Walters drug treatment program and that he had been clean and sober for two years as a result of the program. Counsel further noted that Mr. Williams’ unauthorized use of a movable conviction and his current conviction were directly related to his drug addiction. Additionally, counsel told the court that Mr. Williams had worked to control his anger and was working diligently at building a stronger relationship with his children and his father. In further support of a reduced sentence, counsel informed the court that Mr. Williams was married while in prison.
| ¡¡Prior to pronouncing the sentence, the trial court acknowledged that the jury had given him the benefit of the doubt and found him guilty of simple robbery only. Accordingly, the court was not prepared to diminish the significance of his actions any* further. The court concluded that because Mr. Williams’ offense was a violent offense and that because he had a long criminal history, the mandatory minimum sentence of twenty years imprisonment was not grossly out of proportion with Louisiana’s sentencing laws. The defendant objected to the sentence and filed a motion to reconsider sentence, which was denied. This appeal followed.

STATEMENT OF FACT

This Court previously stated the facts of this case as follows:
Candace Washington and the defendant lived in her apartment located at 10151 Curran Boulevard for approximately five months before the alleged robbery occurred. On April 4, 2010, the defendant was driving Ms. Washington’s *110 car, and he picked her up from work. They argued on the way home because Ms. Washington was late meeting the defendant. They arrived home near midnight, and the defendant asked to have the keys to Ms. Washington’s car. She told him no because she had to be at work the next morning at 6:00 a.m., and he became angry. The defendant went downstairs, while Ms. Washington remained at the top of the stairs. He returned with a knife from the kitchen and approached her at the top of the stairs. The defendant told her to give him the keys before he became violent. She complied, and he said that he would be back.
After the defendant failed to return on April 5th or 6th; Ms. Washington called the police. New Orleans Police Department (NOPD) Officer Monica McLauren responded to the call, took Ms. Washington’s statement and had her sign an auto theft affidavit. Officer McLauren then obtained an arrest warrant for the defendant. Ms. Washington stated that she had to leave her apartment unlocked whenever she left because the defendant also had her apartment key.
On April 8th, Ms. Washington learned that her car had been towed, and the following day her friend took her to the lot where it had been towed so that she could recover her car. Once she retrieved her car, Ms. Washington decided not to sleep at her apartment again because she was afraid of the defendant and wanted to end their relationship.
|4On Saturday, April 10th, Ms. Washington returned to her apartment to retrieve her belongings and found the door to the apartment locked. Because she did not have her key, Ms. Washington knocked, and the defendant answered the door. She told him that their relationship was over and that he needed to remove his things from the apartment. The defendant disagreed and wanted to talk; they talked for approximately one hour. Eventually her cousin notified the police; NOPD Officer Norman was the first officer to arrive. Officer McLauren also came; when she arrived, she observed Ms. Washington loading furniture into her car. The defendant was talking to Officer Norman near the stairwell. Officer McLauren overheard the defendant give his name as Byron Johnson. Recognizing his name from her earlier interview with Ms. Washington, Officer McLauren immediately handcuffed the defendant and read him his Miranda rights. He was taken to. the 7th District Police Station, where he began venting. The officer heard the defendant say, “that’s why bitches are getting killed now. I’m going to get my people to take care of that.”
The knife that was allegedly used by the defendant the night of April 4th was never shown to the police, because, according to Ms. Washington, the police had never asked to see the knife. She also stated that she only took from her apartment the things that she needed; everything else was thrown away including the knife used by the defendant.
Williams, pp. 1-3, 101 So.3d at 106-07 (footnotes omitted).

ERRORS PATENT

A review of the record for errors patent reveals none.

ASSIGNMENT OF ERROR NUMBER 1

By this assignment, the defendant challenges this Court’s prior writ disposition setting aside his third offender multiple bill adjudication and finding him to be a fourth felony offender. Specifically, the defendant contends that the State had no right of review of the district court’s adju *111 dication because: 1) the adjudication was an acquittal and double jeopardy prevents re-consideration; 2) there is no appellate jurisdiction to review a proceeding where no jury trial was available; and 3) there is no appellate jurisdiction to review facts in a criminal case and render a greater verdict or more onerous finding.
|sHowever, as the State maintains, the previous writ disposition constitutes law of the case which bars reconsideration of issues that were fully litigated previously. The “law of the case” doctrine is well-settled; when it is applied and the reasons for it were explained in State v. McElveen, 10-0172, p. 24, n. 8 (La.App. 4 Cir. 9/28/11), 73 So.3d 1033, 1054:
The “law of the case” doctrine applies to all prior rulings or decisions of an appellate court or the Supreme Court in the same case, not merely those arising from the full appeal process. This policy applies to parties who were parties to the case when the former, decision was rendered and who thus had their day in court. The reasons for the “law of the case” doctrine is to avoid relitigation of the same issue; to promote consistency of result in the same litigation; and to promote efficiency and fairness to both parties by affording a single opportunity for the argument and decision of the matter at issue. This doctrine is not an inflexible law; thus appellate courts are not absolutely bound thereby and may exercise discretion in application of the doctrine. It should not be applied where it would accomplish an obvious injustice or where the former appellate decision was manifestly erroneous,
(citations omitted).
During consideration of the State’s earlier writ application, the defendant filed a brief in opposition to the State’s writ application, but failed to raise the issues presented herein. Furthermore, he did not seek review of this Court’s decision with the Louisiana Supreme Court. Even on appeal, Mr. Williams does not allege that there are additional facts or evidence which would warrant reconsideration of this Court’s writ disposition. Nor does he suggest that this Court’s prior factual determinations were not supported by the record. In this matter, we do not find that the former appellate decision was manifestly erroneous.
Furthermore, the particular constitutional safeguards the defendant seeks to invoke simply do not extend to habitual offender proceedings. As the United States Supreme Court noted in Monge v. California, “[w]here noncapital 16sentencing proceedings contain trial-like protections, that is a matter of legislative grace, not constitutional command.” 524 U.S. 721, 734, 118 S.Ct. 2246, 2253, 141 L.Ed.2d 615 (1998). Due process simply requires that defendant be afforded a reasonable opportunity to challenge the accuracy of the information relied on in passing sentence. Simmons v. South Carolina, 512 U.S. 154, 175, 114 S.Ct. 2187, 2200, 129 L.Ed.2d 133 (1994) (O’Connor concurring). It is well-settled that because a habitual offender determination is not an “offense” and simply provides for imposition of an increased sentence for persons convicted of second and subsequent felonies, the double jeopardy clause does not apply. State v. Hayes, 412 So.2d 1323, 1325-26 (La.1982); State v. Langendorfer, 389 So.2d 1271, 1277 (La.1980); State v. Boatner, 304 So.2d 661-62 (La.1974); State v. Holloway, 12-0926, p. 3 (La.App. 4 Cir. 7/3/13), 120 So.3d 795, 797; State v. Davis, 02-0565, p. 16 (La.App. 4 Cir. 12/11/02), 834 So.2d 1170, 1180; State v. Picot, 98-2194 (La.App. 4 Cir. 11/10/98), 724 So.2d 236. In Monge, the Court was clear on this issue:
*112 Sentencing decisions favorable to the defendant, moreover, cannot generally be analogized to an acquittal. We have held that where an appeals court overturns a conviction on the ground that the prosecution proffered insufficient evidence of guilt, that finding is comparable to an acquittal, and the Double Jeopardy Clause precludes a second trial. Where a similar failure of proof occurs in a sentencing proceeding, however, the analogy is inapt. The pronouncement of sentence simply does not ‘have the qualities of constitutional finality that attend an acquittal.’
The Double Jeopardy Clause ‘does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be.’ Consequently, it is a “well-established part of our constitutional jurisprudence’ that the guarantee against double jeopardy neither prevents the prosecution from seeking review of a sentence nor restricts the length of a sentence imposed upon retrial after a defendant’s successful appeal.
Monge, 524 U.S. at 729-730, 118 S.Ct. at 2251. (citations omitted).

\ .ASSIGNMENT OF ERROR NUMBER 2

The defendant also argues that his sentence is unconstitutionally excessive. Specifically, he contends that many factors show that he is an exceptional case that warrants downward departure from the statutorily mandated minimum sentence.
This Court recently addressed the applicable law with regard to claims of excessive mandatory minimum sentences imposed on multiple offenders as follows:
A sentence is unconstitutionally excessive if it (1) makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime. Mandatory minimum sentences imposed on multiple offenders under the Habitual Offender Law are presumed to be constitutional, and defendant bears the burden of rebutting that presumption. To rebut the presumption that a mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:
[he] is exceptional, which in this context means that because of unusual circumstances, the defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
State v. Ladd, 13-1663, p. 3 (La.App. 4 Cir.2014), 146 So.3d 642, 644 (citations omitted).
In this case, the defendant claims that he is one of the exceptional cases that warrant a downward departure from the statutorily mandated minimum sentence for the following reasons:
1. The simple robbery conviction involved a domestic dispute; he is not a threat to the public;
2. The prior convictions used to make him a quadruple offender were not egregious offenses;
|s3. He successfully completed treatment of a long-standing substance abuse problem;
4. He voluntarily made significant accomplishments in programs, establishing his desire and intent to rehabilitate; and
5. He has substantial community and family support; he is married; he has a job.
The defendant in Ladd raised a similar set of reasons for this Court’s consider *113 ation of whether a downward departure of his mandatory minimum sentence was warranted. Ladd was convicted of possession of marijuana, third offense after being found in possession of roughly half of an ounce of marijuana. Ladd was previously convicted of possession of LSD when he was eighteen and possession of hydroco-done when he was twenty-one. He was twenty-five years old when arrested and was twenty-eight years old when sentenced. Ladd pointed out that he was a non-violent drug offender and that under his current sentence he will be forty-five years of age when he is released from prison. Accordingly he asserted that a twenty year sentence was unwarranted for possession of a minimal amount of marijuana by a defendant with no history of violence or of sexual offenses.
In reviewing Ladd’s circumstances, this Court noted that his record of non-violent offenses could be considered, but “it cannot be the only reason, or even the major reason, for declaring such a sentence excessive” because the “defendant’s history of violent or non-violent offenses has already been taken into account under the Habitual Offender Law for third and fourth offenders, which punishes third and fourth offenders with a history of violent offenses more severely than those with a history of non-violent offenses.” State v. Lindsey, 99-3302, p. 5 (La.10/17/00), 770 So.2d 339, 343.
| nUltimately, this Court looked to the benchmark set by the Louisiana Supreme Court in assessing what constitutes an exceptional case in State v. Noble, 12-1923 (La.4/19/13), 114 So.3d 500. In Noble, the trial court departed from the mandatory sentence finding that the defendant’s incarceration punished the seven children he supported and that his criminal history was of a non-violent nature. The Supreme Court found that “[n]either factor individually or in combination defines a class of offender sufficiently narrow to qualify as exceptional.” Noble, p. 3, 114 So.3d at 501. Therefore, the Supreme Court determined that the defendant had to face the enhanced sentencing ranges provided by Louisiana’s Habitual Offender Law “to punish him not only for his most recent violation of this state’s controlled substances law, but also for his repeated felonious behavior over time, placing him in an unfortunately large class of offenders.” Id.
Even if this Court agreed that the defendant in this case has a valid argument for a downward departure from the mandated minimum sentence, we are bound by the standard established in Noble. See also State v. Mead, 44,447 (La.App. 2 Cir. 7/1/09), 16 So.3d 470; State v. O’Neal, 36,431 (La.App. 2 Cir. 10/23/02), 830 So.2d 408 (finding that the completion of substance abuse and other rehabilitation classes while in jail failed to establish that the defendants were exceptional).
Accordingly, Sullivan Williams’ adjudication as a fourth offender and his sentence is affirmed.
AFFIRMED.
LANDRIEU, J. concurs with reasons.