406 So.2d 213 (1981)
STATE of Louisiana
v.
Lawrence BOOWELL.
No. 81-KA-0817.
Supreme Court of Louisiana.
November 16, 1981.
Rehearing Denied December 14, 1981.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Richard Petre, Asst. Dist. Attys., for plaintiff-appellee.
Howard McCurdy, Dwight Doskey, New Orleans, of Orleans Indigent Defender Program, for defendant-appellant.
*214 DOUCET, Justice Ad Hoc.[*]
Defendant Lawrence Boowell was charged by bill of information filed January 9, 1981, with two counts of simple burglary of an inhabited dwelling and one count of carrying a concealed weapon by a convicted felon, violations of La.R.S. 14:62.2 and La. R.S. 14:95.1. Defendant was arraigned on January 12, 1981, and entered a plea of not guilty. On January 16, 1981, defendant filed a motion to suppress items of evidence seized subsequent to his arrest. After the trial court denied the motion to suppress, defendant withdrew his former plea and pled guilty as charged on all counts, reserving his right to appellate review of the trial court's denial of his motion to suppress. See, State v. Crosby, 338 So.2d 584 (La. 1976). The trial court accepted the plea and sentenced defendant to three years at hard labor without benefit of parole, probation, or suspension of sentence on each count, the sentences to run concurrently.

SYNOPSIS OF FACTS
On December 20, 1980, at approximately 11:00 p. m., Officer Bernard Brady and Officer Chet Ballex of the New Orleans Police Department received a complaint, through the police radio dispatcher, that a suspicious looking two-door blue Pontiac was in the area of 4725 Charlene Drive. When the officers were within three blocks of Charlene Drive, they were stopped by two men in an orange Volkswagen van who identified themselves as Louis Berg, Sr. and Louis Berg, Jr. The men informed the officers that the car they were looking for was a blue Pontiac sedan with one yellow front fender and one red front fender. The officers immediately proceeded toward Read Road with the two citizens following in their van. When they had traveled only a short distance, the citizens flashed their vehicle lights on and off, and pulled up alongside the police unit. The Bergs informed the officers that they had just observed the blue Pontiac going toward Chef Mentuer Highway and they had gotten the license number. The officers radioed this information to headquarters and proceeded toward Chef Mentuer Highway with the Bergs following them. After an unsuccessful search for the vehicle, the Bergs advised the officers that the mailman in the 4500 block of Charlene Drive, Ronald Berry, was familiar with the case.
The officers located Berry and questioned him about the suspicious vehicle. Berry told the officers that he delivered mail in the area every day and for last two or three weeks he had observed a blue two-door Pontiac Lemans, with one red fender and one yellow front fender, in the area on several occasions. He told the officers that on that particular morning he noticed the car moving slowly on Charlene Drive, occupied by three black males. He told the officers that he observed the car stop in front of 4711 Charlene Drive, let one of the passengers out, and drive away. He described the passenger who exited the car as approximately 5'11", 140 pounds, wearing dark trousers, a coat, and a hat. Berry stated that he continued on his route until he stopped to speak with the Bergs about the suspicious character. The Bergs and Berry told the officer that the three of them walked toward 2711 Charlene Drive and approached the man standing in front of the house. They told the officer that the man began running and they chased him into the backyard area, where he disappeared.
The officer testified that another police unit, manned by Sergeant Joseph Giardina of the New Orleans Police Department, radioed that the vehicle in question had been observed on Chef Mentuer Highway near Bundy Road. Officer Brady testified that they immediately proceeded toward the area, and observed Sergeant Giardina pulling over a vehicle which fit the description given to them by the citizens. The officer stated that Sergeant Giardina got out of his marked unit and the three of them approached *215 the defendant who was getting out of his vehicle. Sergeant Giardina approached the defendant and requested his driver's license and vehicle registration. After defendant stated that he did not have a driver's license and that the car belonged to one Jimmy Frank, he was placed under arrest for driving without a license. The vehicle registration could not be verified because "the computer system was down". Officer Ballex searched the defendant's person and found a .22 caliber revolver. Officer Brady stated that he noticed a camera case lying open, on its side, on the back seat of the vehicle. The camera case contained several rounds of ammunition, several watches, and a couple of rings. A calculator was on the back seat and a camera was lying on the floor. On the basis of Brady's testimony, the trial court denied the motion to suppress.
ASSIGNMENT OF ERROR NO. 1
The defendant contends that the trial court erred in denying the Motion to Suppress Evidence seized from defendant's person and the vehicle following arrest.
The conduct described to the police officers by the Bergs and Berry was at least suggestive of a "casing" of the neighborhood. It could have been a reconnaissance of the vicinity prior to a burglary of some of its homes. In the past, this court has not required much more of a showing to justify a forcible detention. State v. McGary, 397 So.2d 1305 (La.1981). In McGary, supra, there was a report to the police of suspicious activity of two cars parked at a day care center. The drivers of both cars were questioned at the scene and subsequently contraband was recovered from both cars. This court held in that case that in the circumstances presented there, "... the report he [Officer Pierson] had from the manager of the Day Care Center was more than sufficient to justify his stopping McFadden and McGary for questioning." and that the contraband discovered in plain view after the stop was admissible into evidence. Accordingly, we hold that the stop of Lawrence Boowell's vehicle was justified, based on the information received by the officers from the Bergs and Berry and that the evidence seized as a result of this investigatory stop was admissible into evidence at trial.
ASSIGNMENT OF ERROR NO. 2
Defendant contends that the trial court erred in imposing an illegal sentence for the two counts of simple burglary of an inhabited dwelling.
Defendant was sentenced to serve three years at hard labor without benefit of parole, probation, or suspension of sentence on each count, the sentences to run concurrently.
Defendant's counsel argues that the trial court should not have included ineligibility for parole, probation or suspension of sentence as a part of the entire sentence imposed for the two counts of simple burglary of an inhabited dwelling. He urges that the sentence imposed was not authorized by La.R.S. 14:62.2 and is therefore illegal. He correctly states that an illegal sentence is an error patent and is subject to amendment at any time. State v. Patterson, 384 So.2d 790 (La.1980); State v. Cain, 382 So.2d 936 (La.1980): If a sentence is illegal, it may be vacated and corrected at anytime. La.C.Cr.P. Article 882; State v. Siegel, 354 So.2d 525 (La. 1978).
The determination of whether an illegal sentence was actually imposed, however, requires an interpretation of La.R.S. 14:62.2. The penalty provision of that Article provides:
Whoever commits the crime of simple burglary of an inhabited dwelling shall be imprisoned at hard labor for not less than one year, without benefit of parole, probation, or suspension of sentence, nor more than twelve years.
Defense counsel argues that the statute clearly requires that only the minimum sentence include the ineligibility provision. He urges that a legal sentence in this case would have been concurrent terms of three years at hard labor on each count, with the defendant deemed ineligible for parole, probation or suspension of sentence, during the first year.
*216 The trial court interpreted La.R.S. 14:62.2 as requiring that the defendant be sentenced up to twelve years without benefit of parole, probation or suspension of sentence. As written, the sentencing provision of La.R.S. 14:62.2 is ambiguous. Either the interpretation of the trial court or that of defense counsel could be considered reasonable.
It is a fundamental principle of statutory construction that penal provisions are strictly construed in favor of defendant, who must be afforded the benefit of genuine ambiguity. State v. Brown, 378 So.2d 916 (La.1978); State v. Bosworth, 373 So.2d 152 (La.1979); State v. Young, 357 So.2d 503 (La.1978).
This court should strictly construe La.R.S. 14:62.2 in the defendant's favor. Therefore, we hold that the sentence imposed in this case is illegal and remand the case for resentencing.
AFFIRMED IN PART, REMANDED FOR SENTENCING.
NOTES
[*] Judges Thomas J. Kliebert and Robert J. Klees of the Court of Appeal, Fourth Circuit, participated in this decision as Associate Justices Ad Hoc joined by Chief Justice Dixon and Justices Calogero, Dennis and Watson.