JOY COSSICH LOBRANO, Judge.
| defendant Troy Ellis was charged in count two of a bill of information with simple burglary of an inhabited dwelling, a violation of La. R.S. 14:62.2.[1] Following a trial, the twelve-person jury found defendant guilty as charged, and the trial court sentenced him to twelve years at hard labor. Defendant appealed, raising six assignments of error. Finding no reversible error, we affirm defendant’s conviction and sentence.
The testimony and evidence in the record discloses the following.
Charles Napoli owned a mixed use, two-story building. Charles’ son, Jason Napo-li, an assistant district attorney with the Orleans Parish District Attorney’s Office, resided with his fiancee in an apartment on the second floor on the building. To obtain entry into the apartment, there was an exterior door on the ground floor that opened to a staircase leading to a door to the apartment; both doors had locks.
[2On August 17, 2010, at 2:30 a.m., Jason awoke to the beeping of his apartment alarm and discovered the apartment door slightly ajar. He looked outside, saw nothing amiss, so he closed the door and went back to sleep. At 6:00 a.m., he awoke and left the apartment. When he returned an hour later, his fiancee in *67 formed him that her laptop was missing. Jason then realized his wallet had been stolen and called the police to report the burglary. While waiting for the police, Jason got “online” and discovered that someone had made several unauthorized purchases with his debit card. Shortly thereafter, New Orleans Police Department (NOPD) Officer Troy Dalliet arrived at the scene and learned from Jason that a wallet and a laptop computer were missing, although there were no signs of forced entry into the apartment. After Officer Dalliet had completed the initial police report and left, Jason discovered that his baseball card collection, which he had stored in a suitcase in the second bedroom, was also missing.
Meanwhile, Charles Napoli obtained a list of the three local service stations — one Shell and two Chevron — where Jason’s debit/credit card had been used that morning and forwarded it to the police. He also went to the three stations to inquire about video surveillance cameras and learned that the Chevron station on Jefferson Davis Parkway had video footage. He then went to the Sixth District Police Station, where he met with NOPD Detective Andrew Waldron and gave him that information.
Charles Napoli knew that another tenant in his building had been burglarized six months earlier, and the perpetrator of that burglary was the tenant’s employee. |sHe told Detective Waldron that he had spoken to the tenant’s employee and learned that the burglars of his son’s apartment were allegedly an African-American male named “Troy,” who had done odd jobs for him in the past, and a younger white male named “Packy” (Patrick Constantin). Charles Napoli also informed Detective Waldron that Jason’s baseball card collection was missing from the apartment, a fact not mentioned in the original NOPD incident report.
Detective Waldron called Markman Sports Cards & Collectibles, a store in Metairie that handled baseball cards, and spoke to Mark Charming, the owner. He learned from Channing that two men, an older African-American male and a younger white male, had gone into the store between August 17 and August 20 to sell baseball cards and that Channing had purchased the cards for $80.00.
Detective Waldron then went to the Chevron station on Jefferson Davis Parkway to review the surveillance video; it showed a white male enter the store, followed by an older African-American male. Detective Waldron recognized the white male as his former elementary school classmate Patrick Constantin, but he did not know the other male. He ran Con-stantin’s name and discovered there was an attachment for his arrest.
On August 24, 2010, NOPD Officer James Weir conducted a routine traffic stop of a vehicle; defendant was the driver, and Constantin was a passenger. After running their names through the N.C.I.C. database, Officer Weir discovered that an attachment had been issued for Constantin’s arrest, and he arrested him. When Detective Waldron learned that Constantin was in police custody, he transported |4Constantin to the Sixth District Police Station where he read him his Miranda rights. Constantin waived his rights and gave a statement, admitting the details of the burglary and implicating the defendant. Detective Waldron subsequently obtained a warrant for the defendant’s arrest. Defendant was arrested and taken into police custody.
The following day, Detective Waldron went to Markman Sports Cards & Collectibles and presented two photo lineups to Charming. In the first, Charming imme *68 diately selected photo number five, .a photo of Constantin, but when presented with the second lineup, he took two minutes to select photo number six, a photo of the defendant. Channing said that although he had given the money for the cards to Constantin, both men had participated in the sale and had told him they would split the money.
Detective Waldron confirmed that the crime lab did not find defendant’s fingerprints in Jason Napoli’s apartment; the police had no surveillance video of the defendant in the apartment; and the police never recovered any property from the defendant.
Constantin, who was incarcerated in Orleans Parish Prison at the time of trial, had agreed to testify for the State. He said that he had a vague recollection of the August 17, 2010 burglary because it had occurred more than one and one-half years earlier, and he had been on drugs at the time. Constantin identified the defendant in court, saying that he knew him “a little bit,” and confirmed that he and the defendant took part in a burglary, breaking into the building with a flathead | .^screwdriver. Constantin said that the defendant had chosen the location of the burglary; he remembered riding there with him; and he thought they both knew the owner of the building. Constantin recalled that he was alone for the majority of the time during the course of the burglary; he went into the second bedroom and stole the baseball card collection while the defendant went into the other rooms and took the laptop and wallet. He said the defendant came to him in the second bedroom to alert him that someone was inside the apartment.
Constantin admitted that, after the burglary, he and the defendant went to a Chevron station, where he used the stolen debit/credit card. He said he called several shops that sold baseball cards, and he and the defendant went to the shop in Metairie, where he sold the baseball cards to the shop owner. He testified that the defendant decided to sell the stolen laptop at a bar near Louisiana and S. Claiborne Avenues. Constantin said the defendant went into the bar to sell the laptop while he remained in the car, because he did not know the intended purchaser. Constantin admitted to being arrested on an outstanding warrant by Officer Weir during a traffic stop of defendant’s vehicle, wherein he was a passenger.
Constantin verified that he had gone to elementary school with Detective Waldron. He admitted pleading guilty simultaneously to the burglary in the instant case, to two other simple burglaries, and two counts of theft over five hundred dollars. He said his total sentence was six years, which he said meant that he would have to serve two years and nine months in prison. Constantin admitted that |fihe had one pri- or conviction from 2007, for which he had received two years of probation.
Constantin claimed he had given the statement to the police because Detective Waldron had told him that if he testified, then maybe there was a possibility that “they could help him out or something.” He said that he was forthright with Detective Waldron because he felt guilty for the things he had done and wanted to turn his life around. Constantin said that he “probably” was having “slight” drug withdrawal symptoms when he gave his statement to Detective Waldron six days after he was arrested on the traffic attachment. Constantin said that Detective Waldron did not make any promises to him for his testimony. He admitted that he pled guilty because the State offered him a plea bargain.
When asked on redirect examination whether Detective Waldron had ever told *69 him that if he gave a statement implicating another person, the detective might be able to help him, Constantin replied: “Yes. I mean, I think he said that he might be able [sic]. I mean, there’s a possibility he could talk to the judge or, you know, something like that. I don’t know.” However, Constantin said Detective Waldron had never suggested any names to him or told him whom to implicate.
Detective Waldron, recalled as a witness by the State, testified that he had told Constantin that he could help himself by taking responsibility for his actions and coming clean about everything.
Defendant neither testified at trial nor presented any witnesses on his behalf.
| -¡ERRORS PATENT
A review of the record reveals two errors patent on the face of the record. First, the face of the record (the docket master and minute entries) does not reflect that defendant was arraigned. On the first day of trial, January 11, 2012, after the jury had been selected and sworn, the trial court entertained a motion for mistrial by defense counsel based on the failure to arraign defendant. The prosecutor read from a minute entry from the case when it was in Section “J” of the Orleans Parish Criminal District Court, apparently under a different case number, and prior to it being transferred to Section “G.” The prosecutor read for the record from the September 14, 2010 minute entry that defendant had appeared for arraignment, and counsel had stood in for arraignment only. However, the prosecutor did not read for the record that a plea had been entered at the arraignment. In any case, the trial court denied the motion for a mistrial, noting that the Code of Criminal Procedure did not support the granting of a mistrial.
La.C.Cr.P. art. 555 states that “[a] failure to arraign the defendant or the fact that he did not plead, is waived if the defendant enters upon the trial without objecting thereto, and it shall be considered as if he had pleaded not guilty.” Also, where a defendant is present at arraignment and fails to plead, a plea of not guilty shall be entered. La.C.Cr.P. art. 554. Thus, it is unlikely that defendant would have been arraigned without a plea having been entered, either by him or by the court. Also, although defendant objected to a failure to arraign him by moving for a mistrial, he does not raise the denial of that motion for mistrial as an error on appeal. Any error regarding defendant’s arraignment is harmless beyond a reasonable doubt.
Is As to the second error patent, the trial court failed to stipulate that one year of defendant’s sentence be served without benefit of parole, probation, or suspension of sentence. La. R.S. 14:62.2 states:
Whoever commits the crime of simple burglary of an inhabited dwelling shall be imprisoned at hard labor for not less than one year, without benefit of parole, probation, or suspension of sentence, nor more than twelve years.
In State v. Boowell, 406 So.2d 213 (La.1981), the defendant pleaded guilty to two counts of simple burglary of an inhabited dwelling and was sentenced on each count to three years at hard labor without benefit of parole, probation, or suspension of sentence, with the sentences to run concurrently. On appeal, the defendant argued that the statute clearly required that “only the minimum sentence include the ineligibility provision,” and that a legal sentence would have been concurrent terms of three years at hard labor on each count, “with the defendant deemed ineligible for parole, probation or suspension of sentence, during the first year.” Boowell, 406 So.2d at 215.
The Louisiana Supreme Court stated:
*70 The trial court interpreted La. R.S. 14:62.2 as requiring that the defendant be sentenced up to twelve years without benefit of parole, probation or suspension of sentence. As written, the sentencing provision of La. R.S. 14:62.2 is ambiguous. Either the interpretation of the trial court or that of defense counsel could be considered reasonable.
Id. at 216. Strictly construing the ambiguous penal provision in favor of the defendant, the court found the sentence was illegal and remanded the case for resen-tencing.
In State v. Conley, 411 So.2d 448 (La.1982), the defendant pleaded guilty to simple burglary of an inhabited dwelling and was sentenced to three years at hard labor without benefit of parole, probation, or suspension of sentence. On |9appeal, the defendant contended “that the trial court erred in denying the accused eligibility for probation, parole, or suspension of sentence for the entire term of his sentence.” Conley, 411 So.2d at 449. The Louisiana Supreme Court cited its decision in Boo-well, supra, stating that in Boowell it “accepted the defendant’s contention that the ineligibility provision should attach only to the statute’s minimum one-year term.” Id. The court in Conley thus found that the sentence imposed was clearly illegal, vacated it, and remanded the case for further proceedings.
In State v. Martin, 599 So.2d 422 (La.App. 4th Cir.1992), the defendant pleaded guilty to simple burglary of an inhabited dwelling and was sentenced to twelve years at hard labor without benefit of parole. He was subsequently adjudicated a fourth-felony habitual offender and was re-sentenced to twenty years at hard labor, without benefit of parole for the first twelve years. On appeal this court vacated the habitual offender adjudication and sentence, and remanded the case for re-sentencing. This court noted in a footnote that the original sentence should not be reinstated because it contained an error patent rendering it illegally severe, citing Conley, supra, and Boowell, supra, for the proposition that the Louisiana Supreme Court “has construed the ineligibility for parole, probation or suspension of sentence provision found in R.S. 14:62.2 to attach only to the statute’s minimum one year term.” Martin, 599 So.2d at 425, n. 1.
Thus, this court has followed the Louisiana Supreme Court in interpreting the sentencing provision in La. R.S. 14:62.2 as requiring that the first year of any sentence imposed under that statute be served without benefit of parole, probation, or suspension of sentence. In State v. Jones, 2012-0510, pp. 6-7 (La.App. 4 Cir. 6/12/13), 119 So.3d 859, 863, this court noted that La. R.S. 15:301.1(A) selfjacti-vates10 the correction of the patent error in the instant case — the trial court’s failure to stipulate that the first year of a sentence under La. R.S. 14:62.2 be served without benefit of parole, probation, or suspension of sentence — thus eliminating the need to remand the case for a ministerial correction of the sentence.

ASSIGNMENT OF ERROR NO. 1

In his first assignment of error, defendant argues that the evidence was insufficient to support his conviction.
“When issues are raised on appeal as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence.” State v. Marcantel, 2000-1629, p. 8 (La.4/3/02), 815 So.2d 50, 55, citing State v. Hearold, 603 So.2d 731, 734 (La.1992).
This court set forth the well-settled standard of review for sufficiency of the evidence in State v. Huckabay, 2000- *71 1082 (La.App. 4 Cir. 2/6/02), 809 So.2d 1093, as follows:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 448 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mus-sall; Green, supra. “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the Inweight of the evidence.” State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
Huckabay, 2000-1082, p. 32, 809 So.2d at 1111 (quoting State v. Ragas, 98-0011, pp. 13-14 (La.App. 4 Cir. 7/28/99), 744 So.2d 99, 106-107).
“The testimony of a single witness, if believed by the trier of fact, is sufficient to support a conviction.” State v. Wells, 2010-1338, p. 5 (La.App. 4 Cir. 3/30/11), 64 So.3d 303, 306 (citation omitted). A fact-finder’s decision concerning the credibility of a witness will not be disturbed unless it is clearly contrary to the evidence. State v. James, 2009-1188, p. 4 (La.App. 4 Cir. 2/24/10), 32 So.3d 993, 996 (citation omitted).
Concerning the standard of review for sufficiency of the evidence, defendant cites La. R.S. 15:438, providing:
The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.
Defendant, referring to circumstantial evidence in the case, cites and quotes State v. Shapiro, 431 So.2d 372 (La.1982), on rehearing, for the proposition that “ ‘[t]here is a possibility that the quality of the evidence supporting a conviction | ^would satisfy Jackson v. Virginia, [443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ], ..., but would not satisfy the requirement of R.S. 15:438.’ ” Shapiro, 431 So.2d at 384 (quoting State v. Williams, 423 So.2d 1048, 1052 (La.1982)).
*72 However, the Louisiana Supreme Court has clarified that the circumstantial evidence rule of La. R.S. 15:438 is “not a separate test” from' the Jackson v. Virginia standard, but rather that it “merely provides an evidentiary guideline for the jury when considering circumstantial evidence and facilitates -appellate review of whether a rational juror could have found defendant guilty beyond, a reasonable doubt.” State v. Bridgewater, 2000-1529, p. 9 (La.1/15/02), 823 So.2d 877, 889 (quoting State v. Wright, 445 So.2d 1198, 1201 (La.1984)). Under Jackson, all evidence, direct and circumstantial, “must be sufficient to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt.” Bridgewater, supra (citing State v. Jacobs, 504 So.2d 817, 820 (La.1987)).
In State v. Mack, 2013-1311 (La.5/7/14), 144 So.3d 983, the Louisiana Supreme Court acknowledged that when it first implemented the Jackson v. Virginia standard, it had indicated at one point “that Louisiana’s traditional rule with respect to circumstantial evidence as incorporated into La. R.S. 15:458, that the evidence must negate every reasonable hypothesis of innocence, might change the terms of analysis and even add a second level of review.” Mack, 2013-1311 at p. 8, 144 So.3d at 988-89 (citing and quoting from Shapiro, supra, Williams, supra, and Wright, supra).
The court in Mack quoted from Wright v. West, 505 U.S. 277, 296-97, 112 S.Ct. 2482, 2492-93, 120 L.Ed.2d 225 (1992), where the United States Supreme Court emphasized that it intended to narrowly apply its seminal decision in Jackson v. Virginia:
11sIn Jackson, we emphasized repeatedly the deference owed to the trier of fact and, correspondingly, the sharply limited nature of constitutional sufficiency review. We said that ‘all of the evidence is to be considered in the light most favorable to the prosecution,’ 443 U.S. at 319, 99 S.Ct. at 2789 (emphasis in the original); that the prosecution need not affirmatively ‘rule out every hypothesis except that of guilt,’ id., at 326, 99 S.Ct. at 2792; and that a reviewing court ‘faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution,’ ibid.
Mack, 2013-1311 at p. 8,144 So.3d at 988.
To convict an accused of simple burglary of an inhabited dwelling, the State must prove (1) that the defendant made an unauthorized entry into a dwelling, house, apartment, or other structure; (2) that at the time of such entry the dwelling, house, apartment or other structure was being used in whole or in part as a home or place of abode; and (3) that the defendant had the specific intent to commit a felony or any theft therein. La. R.S. 14:62.2.
Defendant asserts that Constantin was not able to say, without a doubt, that defendant actually ever entered the apartment in question. However, Constantin’s final word on that issue, given on re-redirect examination by the State, was his confirmation that he was certain defendant was with him inside of the apartment. This is direct evidence. In addition, Con-stantin testified that defendant must have opened the door of one room because defendant told him that there was someone in that room. . Constantin was emphatic that he did not go into that particular room. Jason Napoli testified that he and his fiancee were sleeping in the apartment at the time. The jury reasonably could have inferred that during the burglary, defendant opened the door of the bedroom in which Jason Napoli and his fiancee were *73 sleeping, and he then alerted his accomplice Constantin that there was someone in 114that room. Also, the only thing Con-stantin specifically recalled taking from the apartment was the baseball card collection. Jason Napoli testified that the baseball collection was kept in a second bedroom, which was why he initially did not notice it was missing.
Channing identified defendant in a photo lineup as having been with Constantin when Channing purchased the baseball cards from Constantin. Channing verified that defendant had participated in the sale of the cards and that they (defendant and Constantin) had said they would split the money from the sale.
Charles Napoli said the defendant had done some work for him at the apartment building. The thrust of Constantin’s testimony was that it was defendant who chose the location of the burglary, and defendant drove them to the location. It was undisputed that Officer Weir made a traffic stop of a vehicle being driven by defendant and arrested Constantin, the front seat passenger, on an outstanding warrant.
At the beginning of Constantin’s testimony, he was unclear as to defendant’s role in the burglary, and even as to defendant’s presence. The trial was recessed shortly after Constantin began testifying, and he consulted with an attorney. When he returned, his testimony as to defendant’s role appeared to be more certain. However, even after consulting with an attorney, his recollection of the events of the night was generally foggy, which he attributed to his drug use during that period of time. Constantin admittedly pleaded guilty to his commission of the burglary, and at the same time to two other burglaries and two felony thefts. He received six years at hard labor on each of the five counts, with the sentences to be served concurrently. It was for the jury to assess Constantin’s credibility.
| iflThe trial court instructed the jury on the law of principals — that “[a]ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.” La. R.S. 14:24.
Viewing all the evidence in a light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that defendant was a principal to the commission of the simple burglary of the inhabited dwelling of Jason Napoli.
There is no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 2

In his second assignment of error, defendant argues that the trial court erred by improperly influencing jury deliberations.
Defendant asserts that the jury initially returned with a 10-2 verdict of guilty to the responsive charge of attempted simple burglary of an inhabited dwelling; that the jury foreman had written that verdict on the front of the verdict form (instead of the back); and that the trial judge gave the jurors confusing and vague instructions to return to the jury room and either redo the paperwork or recommence deliberations. Defendant contends that when the jury returned after having been sent back to the jury room, the foreperson had written on the back of the verdict form “guilty of attempted simple burglary of an inhabited dwelling,” and then the foreperson apparently had scratched out that verdict and had written “guilty of simple burglary of an inhabited dwelling.”
*74 11fiDefendant argues that the trial court’s action “amounted to improper influence upon jury deliberations, and renders the verdict illegal.”
The record contains copies of the two responsive verdict forms at issue. The first verdict form has handwritten on the front of it: “Guilty of attempted simple burglary of an inhabited dwelling.” The signature of the jury foreperson is also on the front of the form. The back of this form has handwritten on it: “Guilty = 10 2.” Underneath that, in handwriting, is: “Not Guilty = 02.” Next to that was the jury foreperson’s signature or initials.
The second verdict form is the one returned by the jury after the trial court sent the jurors back to the jury room with a new verdict form. The back of the second verdict form contains, at the top of the page, the handwritten verdict of: “Guilty of attempted simple burglary of an inhabited dwelling.” The signature of the foreperson and the date “01/12/12” is written underneath that verdict. However, that verdict of attempted simple burglary of an inhabited dwelling is scratched through. Underneath the foreperson’s signature accompanying that verdict are several handwritten illegible words that are also scratched through. Underneath those scratched out, illegible words is the handwritten verdict: “Guilty of simple burglary of inhabited dwelling.” The signature of the foreperson is at the end of the verdict, on the same line, and underneath it is written the date “01/12/12.” The record also contains a copy of the front of the second verdict form, listing the responsive verdicts in the case, but nothing is handwritten on it.
La.C.Cr.P. art. 810 states, in pertinent part, that “[w]hen a verdict has been agreed upon, the foreman shall write the verdict on the back of the list of responsive verdicts given to the jury and shall sign it.”
|17La.C.Cr.P. art. 813 states:
If the court finds that the verdict is incorrect in form or is not responsive to the indictment, it shall refuse to receive it, and shall remand the jury with the necessary oral instructions. In such a case the court shall read the verdict, and record the reasons for refusal.
The record in the instant case does not reflect that defendant contemporaneously objected to any aspect of the trial court’s action with regard to the first verdict form. La.C.Cr.P. art. 841(A) states that “[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.” See also State v. Charles, 326 So.2d 335, 336 (La.1976) (assignment of error that the trial court erred by permitting the jury foreman to correct the form of the verdict in open court rather than remanding the jury to make the correction, as provided for by La.C.Cr.P. art. 813, was not preserved for review where defendant failed to make contemporaneous objection required by La.C.Cr.P. art. 841.)
Defendant asserts that “[djefense counsel objected, and requested that the first verdict be sealed in the record.” However, the trial transcript does not support this assertion. The record reflects that after the trial court sent the jury back to either “redo the paperwork” or to continue deliberating, the jury exited the courtroom; there was a break in the proceedings; and the jury reentered the courtroom with the second verdict in proper form. Defendant has failed to show that the alleged error was preserved for appellate review.
Even assuming the issue was preserved for review, defendant fails to show that the trial court erred for the following reasons.
*75 The first verdict clearly was “incorrect in form” under La.C.Cr.P. arts. 810 and 813. Thus, in accordance with La.C.Cr.P. art. 813, the trial court properly 118refused to receive the first verdict; properly remanded the jury with a new verdict form; properly requested that the jury foreperson not write anything on the front of the form; and properly instructed the jury foreperson to write the verdict on the back of the form.
The trial court’s instruction to “please go back upstairs and either recommence to deliberation or redo the paperwork” does not suggest that the original verdict reached, attempted simple burglary of an inhabited dwelling, was either incorrect (other than as to form) or was not the verdict the trial court believed should have been returned. Further, defendant cites no authority for the proposition that upon being sent back to the jury room with a new verdict form, the jury could not have lawfully deliberated to reach a different verdict prior to returning with an official verdict.
In State v. Tart, 93-0772 (La.2/9/96), 672 So.2d 116, a jury in the sentencing phase of a first degree murder capital case returned a “sentencing verdict,” listing “simple burglary” as the fourth and final aggravating circumstance offense it found present from the list of possible aggravating circumstance offenses in La.C.Cr.P. art. 905.4(A)(1) (“The offender was engaged in the perpetration or attempted perpetration of.... ”). However, La. C.Cr.P. art. 905.4(A)(1) does not list simple burglary as one of the aggravating circumstance offenses. After the sentencing verdict had been read and the jury polled, the trial court examined the verdict form and informed the jury that simple burglary was not one of the aggravating circumstance offenses listed — noting for the jury that simple robbery was listed. The trial court ordered the jury back to the jury room “to consider that fact and to change the verdict form should you see fit.” Tart, 93-0772, p. 45, 672 So.2d at 150. After further deliberation the jury returned with a new sentencing 11flverdict, having essentially substituted simple robbery as the fourth and final aggravating circumstance offense in place of simple burglary.
After being sentenced to death, the defendant in Tart appealed, arguing in part that the trial court’s action had violated his right against double jeopardy. The Court analogized the situation to one involving a jury verdict as to guilt, citing La.C.Cr.P. art. 813. The Court quoted its much earlier decision in State v. Owens, 193 La. 505, 190 So. 660, 664 (1939), wherein it had stated that a trial judge “may inform the jury-without necessarily suggesting what should be the verdict-why it is that the verdict is incomplete or not responsive to the charge.” Tart, 93-0772, p. 46, 672 So.2d at 151. The Court in Tart ultimately found no error in the trial court’s actions, stating: “There was no attempt on the part of the trial judge to influence the verdict. He only pointed out the proper statutory language and sent the jury back to deliberate.” Id.
In the instant case, the trial judge did not suggest what the verdict should be, or that the original verdict was incoirect other than as to its form. The trial court effectively informed the jury that the problem was that “some information” had been written on the front of the verdict form; that nothing should be written on the front of the form; and that if a verdict was reached, it had to be written on the back of the form. As in Tart, there was no attempt by the trial judge to influence the verdict. We cannot say the trial court erred.
The second assignment of error is without merit.

*76
ASSIGNMENT OF ERROR NO. 3

In his third assignment of error, defendant argues that the trial court erred by not finding that the State peremptorily struck ten African-American prospective | gpjurors in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Prior to the swearing of the jury panel, the defense raised the Batson objection, asserting that the State’s challenges to ten prospective jurors were based on race. The State does not dispute that ten of its eleven peremptory challenges struck African-American venire members.
The Louisiana Supreme Court set forth the applicable law on Batson in State v. Anderson; 2006-2987 (La.9/9/08), 996 So.2d 973, as follows:
In Batson, the Supreme Court held that an equal protection violation occurs if a party exercises a peremptory challenge to exclude a prospective juror on the basis of a person’s race. The Supreme Court reaffirmed its position that racial discrimination by any state in jury selection offends the Equal Protection clause of the 14th Amendment in Miller-El v. Dretke, 545 U.S. 231, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005). Louisiana law codifies the Batson ruling in LSA-C.Cr.P. art. 795. FN6. [2] See also State v. Snyder, 1998-1078 (La.9/6/06), 942 So.2d 484, rev’d on other, grounds, Snyder v. Louisiana, 552 U.S. 472, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008).
If the defendant makes a prima facie showing of discriminatory strikes, the burden shifts to the state to offer raeially-neutral explanations for the challenged members. If the race-neutral explanation is tendered, the trial court must decide, in step three of the Batson analysis, whether the defendant has proven purposeful discrimination. The race-neutral explanation need not be persuasive or even' plausible. Rice v. Collins, 546 U.S. 333, 126 S.Ct. 969, 973-974, 163 L.Ed.2d 824 (2006), quoting Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). It will be deemed race-neutral unless a discriminatory intent is inherent in the explanation. The ultimate burden of persuasion as to racial motivation rests with, and never shifts from, the opponent of the peremptory challenge. State v. Tyler, 97-0338, at 3 (La.9/9/98), 723 So.2d 939, 942, cert. denied, 526 U.S. 1073, 119 S.Ct. 1472, 143 L.Ed.2d 556 (1999).
The trial court’s findings with regard to a Batson challenge are entitled to great deference on appeal. Id. at 4 [723 So.2d 939]; see also, State v. Juniors, 03-2425, p. 28 (La.6/29/05), 915 So.2d 291, 316. When a defendant voices a Batson objection to the State’s exercise of a peremptory challenge, the finding of the absence of discriminatory intent depends upon whether the trial court finds the prosecutor’s race-neutral explanations to be credible. “Credibility can be measured by, among other factors, the prosecutor’s demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy.” Miller-El [v. Cockrell], *77 537 U.S. [322] at 339, 123 S.Ct. [1029] at 1040 [154 L.Ed.2d 931 (2003) ].
The three-step Batson process which guides the courts’ examination of peremptory challenges for constitutional infirmities has recently been described again by the Supreme Court as follows:
A defendant’s Batson challenge to a peremptory strike requires a three-step inquiry. First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. Although the prosecutor must present a comprehensible reason, the second step of this process does not demand an explanation that is persuasive, or even plausible; so long as the reason is not inherently discriminatory, it suffices. Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination. This final step involves evaluating the persuasiveness of the justification proffered by the prosecutor, but the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike. [Internal quotations and citations omitted.]
Collins, 546 U.S. at 338, 126 S.Ct. at 973-74.
Anderson, 2006-2987, pp. 41-43, 996 So.2d at 1004-05.
“[A] trial court’s ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous.” Snyder v. Louisiana, 552 U.S. 472, 477, 128 S.Ct. 1203, 1207, 170 L.Ed.2d 175 (2008).
After the defense raised the Batson objection, the trial court asked what percentage of the prospective juror venire was African-American, thus triggering the first step of the three-step Batson inquiry. The State represented that twenty-seven of the forty-two prospective jurors were African-American, and the defense ^agreed. The prosecutor also represented that she believed that “the majority of the jurors who have been seated, at least over half are African-Americans,” a representation not disputed by defense counsel. At that point, the trial court directed the State to give its race-neutral reasons, thus implicitly finding that defendant had made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. After the State gave its reasons for striking the prospective jurors, the trial court asked defense counsel if there was “anything else” before it made its ruling. Defense counsel responded no, and offered no comment or response to any of the State’s proffered race-neutral reasons. The trial court found the State’s reasons to be race neutral.
On appeal, defendant complains that the trial court failed to consider the reasons proffered by the State “in light of all evidence bearing on the matter, and in fact the Judge, without any deliberation, immediately denied the defense’s Batson challenge.” [3] Defendant also asserts that the trial court “did not adequately test the ‘race-neutrality’ of the State’s reasons.”
*78 “Since the United States Supreme Court announced its decision in Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), it is undisputed that the reasons given for exercising a peremptory challenge need only be plausible.” State v. Seals, 95-0305, p. 8 (La.11/25/96), 684 So.2d 368, 375 (citation omitted). “In courts of our state, as well as in federal courts in this circuit, eye contact (or lack of it), body language, and other sense impressions appear to be recognized as important factors in decisions to exercise peremptory challenges.” Id. (footnote Igsomitted). Also, “[t]he finding that individuals of any race or color who have served on juries that acquitted tend to be people that the government does not want is a permissible view, and the court’s finding that the government would have used a peremptory challenge to excuse [the prospective juror] regardless of race is not clearly erroneous.” State v. Maxwell, 2011-0564, p. 12 (La.App. 4 Cir. 12/21/11), 83 So.3d 113, 122 (citing and quoting U.S. v. Douglas, 525 F.3d 225, 241 (2 Cir.2008)).
The State does not contend that the trial court erred by finding that defendant made such a prima facie showing. Thus, the purported race-neutral reasons given by the State will be examined.
The voir dire transcript indicates the State exercised its first, second, fourth, sixth, eighth and tenth peremptory challenges by striking African-American veni-re members who had failed to make eye contact, engage in conversation, or display any interest in the proceedings. The State exercised its third peremptory challenge on an African-American venire member who did not understand or respond intelligibly to the questions posed to her by the trial court and the attorneys. The State exercised it fifth peremptory challenge on an African-American venire member who was employed by Loyola University College of Law and knew the defense attorney as a former student. The State exercised its seventh and ninth peremptory challenges on two African-American venire members who had served on previous juries that had acquitted defendants.
The reasons the prosecutor gave for challenging the African-American venire members were all plausible and race-neutral. Defense counsel did not attempt to dispute this assessment. Furthermore, defendant has failed to show that the trial court abused its discretion or was clearly wrong in accepting the State’s 124race-neu-tral reasons. The burden of proving purposeful racial discrimination rested with the defendant, and he has not met his burden.
There is no merit to the instant assignment of error. •

ASSIGNMENT OF ERROR NO. 4

In the fourth assignment of error, defendant raised an issue that he had raised in a pretrial writ application, i.e., the trial court erred in denying his motion to recuse the Orleans Parish District Attorney’s Office, given that that the victim, Jason Napoli, was an assistant district attorney with that office when defendant allegedly committed the burglary and at the time of trial.
Defendant filed the motion to recuse the Orleans Parish District Attorney’s Office, which the trial court denied. He sought a review of that ruling by filing an application for supervisory writ, which this court denied, stating: “We find that the trial court did not err in denying the relator’s motion to recuse and, accordingly, the relator’s application for supervisory writ is denied.” State v. Ellis, unpub., 2011-1725 (La.App. 4 Cir. 1/10/12).[4] The State now *79 contends that this court’s writ disposition is “law of the case” and the court should not reconsider that ruling, citing State v. Cox, 2011-0670 (La.App. 4 Cir. 2/22/12), 85 So.3d 252. We disagree.
In Cox, supra, the State sought supervisory review of a trial court’s granting of a defendant’s motion to suppress evidence. This court granted the State’s writ application, reversed the trial court, finding it abused its discretion by granting the motion, and remanded the matter. State v. Cox, unpub. 2010-1251 (La.App. 4 Cir. 9/8/10), writ denied 2010-2280 (La.10/25/10), 48 So.3d 279. Following the 12sdenial of his application for rehearing, the defendant applied for a writ to the Supreme Court, which the Court denied. Id. at pp. 1-2, 85 So.3d at 253-54 & n. 1. Thereafter, the defendant pled guilty pursuant to State v. Crosby, 338 So.2d 584 (La.1976). Id. at p. 2, 85 So.3d at 254 & n. 2. He then appealed, claiming that his motion to suppress evidence should have been granted. Id. at p. 4, 85 So.3d at 255. Because the court already ruled on the issue and defendant did not present any new evidence on appeal to show that the prior writ disposition was in error, this court found his claim was barred from consideration on appeal by the “Taw of the case’ doctrine.” Id. at p. 5, 85 So.3d at 255-56. This court cited to a footnote in State v. McElveen, 2010-0172 (La.App. 4 Cir. 9/28/11), 73 So.3d 1033, wherein it stated: “[t]he law of the case doctrine applies to all prior rulings or decisions of an appellate court or the Supreme Court in the same case, not merely those arising from the full appeal process.” Id. at p. 24, 73 So.3d at 1054, n. 8. However, referring to that same footnote in a concurring opinion in State v. Williams, 2014-0630 (La.App. 4 Cir. 12/18/2014), 158 So.3d 107, 2014 WL 7202642, (Landrieu, J., concurring), Judge Landrieu clarified the law of the case doctrine, stating:
[T]his general statement, taken out of context, can be overly broad. It must be read in conjunction with the established principle that the denial of a request for supervisory review has no precedential value and cannot establish the law of the ease. See, Pitre v. Louisiana Tech University, 95-1466, 95-1487, p. 8 (La.5/10/96), 673 So.2d 585, 589.
When a court of appeal denies a writ application, it does not reach the substantive issue in the application. It merely declines to exercise its supervisory jurisdiction. As stated by the Louisiana Supreme Court, in this instance, a court of appeal is “without jurisdiction to affirm, reverse or modify the judgment of the trial court.” Bulot v. Intracoastal Tubular Services, Inc., 2002-1035, p. 1 (La.6/14/02), 817 So.2d 1149, 1149. Thus, the \2e,denial of a writ application does not result in the law of the case.
Williams, 2014-0630, 158 So.3d 107, 114, 2014 WL 7202642, p. 6 (emphasis added).
Cox is distinguishable from the present case. This court in Cox granted the State’s writ application, considered the merits, reversed the trial court’s ruling and remanded the matter. The defendant unsuccessfully applied for a rehearing and a supervisory writ in the Supreme Court. In the present case, this court denied the defendant’s writ application. Therefore, the prior writ disposition did not establish law of the case.
As to the merits of the fourth assignment of error, La.C.Cr.P. art. 680 provides:
*80 A district attorney shall be recused when he:
(1) Has a personal interest in the cause or grand jury proceeding which is in conflict with fair and impartial administration of justice;
(2) Is related to the party accused or to the party injured, or to the spouse of the accused or party injured, or to a party who is a focus of a grand jury investigation, to such an extent that it may appreciably influence him in the performance of the duties of his office; or
(3) Has been employed or consulted in the case as attorney for the defendant before his election or appointment as district attorney.
The recusal of an assistant district attorney does not require the recusal of the district attorney or his/her other assistants. In a motion to recuse the district attorney, the defendant bears the burden of showing by a preponderance of the evidence that the district attorney has a personal interest in conflict with the fair and impartial administration of justice. State v. Edwards, 420 So.2d 663, 673 (La.1982). “An appearance of bias and prejudice is not sufficient to warrant the 127granting of a motion to recuse. In order to show that a [district [ajttorney should be recused from a case the defendant has to prove that he was treated differently in the management of his case.” State v. Wainwright, 2002-2212, pp. 1-2 (La.App. 4 Cir. 12/30/02), 837 So.2d 123, 124.
The Supreme Court “has interpreted La.C.Cr.P. art. 680(1) and its predecessor, La.C.Cr.P. art. 310 (1928), to embody a policy requiring a district attorney’s recu-sal when the situation raises questions as to whether the district attorney’s ability to fairly and impartially perform his duties has been impaired, even unconsciously and despite his earnest assertions to the contrary.” State v. King, 2006-2383, p. 9 (La.4/27/07), 956 So.2d 562, 567. “[Louisiana] C.Cr.P. art. 680(1) does not envision a subjective determination as to whether the district attorney would, in fact, be unfair. The article employs an objective decision as to whether a reasonable person would believe the facts' at issue regarding the district attorney’s personal interest in the cause would impair his ability to act fairly and impartially in conducting defendant’s prosecution.” Id.
In State v. Cooper, 2000-0520 (La.App. 4 Cir. 11/29/00), 774 So.2d 1040, this court reviewed the denial of a defendant’s motion to recuse the Orleans Parish District Attorney’s Office where the victim of the alleged crime was the cousin of Orleans Parish District Attorney Harry Connick, Sr. The defendant had argued that due to the relationship between the district attorney and his cousin, the district attorney’s office could not be impartial and had refused to enter into a plea agreement with him. The court, referring to La.C.Cr.P. art. 680 and the defendant’s burden, stated:
Even though the victim in this case is alleged to be a cousin of the District Attorney, the defendant introduced no evidence at all at the hearing on his motion to recuse. 1 ^Therefore, there is nothing before us to suggest that the relationship, if any, between the District Attorney and the victim in this case influenced the fair and impartial administration of justice in this case. The defendant has not produced any evidence to suggest that Harry Connick, Sr., was personally involved in this case, that he discussed the case with the assistant who handled the case, that he refused to allow the assistant to offer a plea bargain or that the alleged relationship between the victim and the District Attorney in any way affected the resolution of the defendant’s case.
*81 In State ex rel T.F., 98-3033 (La.App. 4 Cir. 4/1/99), 732 So.2d 125, 127, this Court cited the standard set forth in State v. Bourque, 622 So.2d 198 (La.1993):
The defendant did not present any evidence tending to show a personal interest on behalf of the entire district attorney’s office, which would threaten the fair and impartial administration of justice. ‘The mere presence of a victim’s relative in the district attorney’s office does not support a finding of recusal.’ [Citation omitted]
The record shows that the defendant in the instant case is a career criminal with prior convictions for purse snatching in 1988, distribution of cocaine in 1990 and, most recently, for aggravated battery of a police officer and first degree robbery in 1997. In the latter case, he was multiple billed and sentenced to life imprisonment. This criminal record provided sufficient basis for the State’s refusal to enter into a plea bargain with the defendant.
Cooper, 2000-0520, pp. 2-3, 774 So.2d at 1042.
In the present case, the defendant presented no evidence to carry his burden of showing that the Orleans Parish District Attorney had a personal interest in the cause in conflict with the fair and impartial administration of justice. The defense conceded that prejudice could not be shown, but argued that the plea bargain offered to the defendant for a twenty-five year sentence showed the district attorney’s personal interest, especially in light of the plea bargain accepted by 129codefendant, Constantin, whereby he was not multiple billed and received a six year sentence on each burglary charge. The State had discounted that argument at the hearing on the motion to recuse by noting that Constantin was a second felony offender, and a plea bargain by which the State agreed not to multiple bill him and to agree to a six year sentence on each simple burglary charge was fair. Like the defendant in Cooper, the defendant here is a fourth felony offender. The State persuasively argued that the plea bargain for twenty-five years as a multiple offender was a fair offer. The State argued that if the defendant were convicted of simple burglary of an inhabited dwelling at trial and then found to be a fourth offender, he would be sentenced to the mandatory life sentence. Therefore, the offer of a twenty-five year sentence does not show that the district attorney proceeded in a manner in conflict with the fair and impartial administration of justice.
The trial court considered the defense argument relating to the lack of a more lenient plea bargain, and it concluded:
Given your client’s substantial criminal history, I cannot say that the lack of a better offer, in and of itself, is evidence that could put this court on notice that the district attorney should be removed from the case under Article 680. Therefore, I would have to look solely to the relationship of the victim to the district attorney’s office, and that is, he’s an employee of the office, and I find, as a fact, that that is not sufficient to warrant recusation of the district attorney’s office.
Thus, we find the trial court properly denied the defendant’s motion to recuse the Orleans Parish District Attorney’s Office.
The fourth assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 5

IsnDefendant’s fifth assignment of error is that La.C.Cr.P. art. 782, providing for conviction by a less than unanimous (11-1 or 10-2) jury verdict in cases in *82 which punishment is necessarily at hard labor, is unconstitutional as a denial of his rights under the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution.
Defendant raises this issue as though he were raising it for the first time on appeal. However, the record reflects that defendant raised this issue first in the trial court in a post-trial/post-verdict “Motion for Mistrial and/or Motion to Declare La. C.Cr.P. art. 782 Unconstitutional” filed on July 30, 2012, more than six months after trial. The trial court denied both motions at the September 19, 2012 sentencing. Defendant does not complain of any error as to the trial court’s denial of either of these two motions.
However, these motions were not proper procedural vehicles for raising the unconstitutionality of a statute. The Louisiana Code of Criminal Procedure makes no provision for the filing of a post-conviction motion to declare jury unanimity laws unconstitutional. Defendant cites no authority for the filing of such a motion.
Nor does defendant cite any authority for the proposition that a motion for mistrial, filed six months after the verdict in the case has been rendered and trial has concluded, is a proper procedural vehicle for raising any type of issue relating to that prosecution. Mistrial has been defined as (1) “[a] trial that the judge brings to an end, without a determination on the merits, because of a procedural error or serious misconduct occurring during the proceedings;” or (2) “[a] trial that ends inconclusively because the jury cannot agree on a verdict.” Black’s Law Dictionary (9th Ed.2009). Thus, mistrial contemplates that there is a trial in progress. Logically, there can be no mistrial granted after a verdict has been returned and trial has concluded.
| o,Defendant does not address on appeal the issue of how the constitutionality of La.C.Cr.P. art. 782 was preserved for review on appeal. It is well settled that “[t]he constitutionality of a statute cannot be raised for the first time on appeal.” State v. Santos-Castro, 2012-0568, pp. 26-27 (La.App. 4 Cir. 7/31/13), 120 So.3d 933, 949 (quoting State v. Williams, 2008-1046, p. 2 (La.App. 4 Cir. 2/10/09), 5 So.3d 904, 905). Thus, defendant may not attack the constitutionality of La.C.Cr.P. art. 782 for the first time on appeal.
As to the merits of defendant’s claim that La.C.Cr.P. art. 782 is unconstitutional as a denial of his rights under the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution, both the Louisiana Supreme Court and this court have consistently rejected this argument.[5] See State v. Bertrand, 2008-2215, p. 8 (La.3/17/09), 6 So.3d 738, 743 (“Due to this Court’s prior determinations that Article 782 withstands constitutional scrutiny, and because we are not presumptuous enough to suppose, upon mere speculation, that the United States Supreme Court’s still valid determination that non-unanimous 12 person jury verdicts are constitutional may someday be overturned, we find that the trial court erred in ruling that Article 782 violated the Fifth, Sixth, and Fourteenth Amendments.”); State v. Hankton, 2012-0375, p. 7 (La.App. 4 Cir. 8/2/13), 122 So.3d 1028, 1032 (“We too have abided by the Bertrand instruction. See, e.g., State v. Lawrence, 09-1637, p. 18 (La.App. 4 Cir. 8/25/10), 47 So.3d 1003, 1013 (“Suffice it to say that intermediate appellate judges, just like a trial judge, are ‘not at liberty to *83 ignore the controlling jurisprudence of superior courts.’ ”)”).
|S2Even assuming the issue of the constitutionality of La.C.Cr.P. art. 782 was preserved for review, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 6

In his sixth assignment of error, defendant argues that the cumulative effect of the errors complained of rendered his trial unfair. However, none of the alleged errors raised by defendant individually constitutes reversible error. The cumulative effect of alleged errors complained of by a defendant on appeal, none .of which constitutes reversible error individually, does not deprive the defendant of his right to a fair trial, and thus does not constitute reversible error. See State v. Draughn, 2005-1825, p. 70 (La.1/17/07), 950 So.2d 583, 629 (citing State v. Copeland, 530 So.2d 526, 544-45 (La.1988)).
The last assignment of error is without merit.
Accordingly, for the above reasons, the defendant’s conviction and sentence are affirmed.
AFFIRMED.

. Defendant was jointly indicted with Patrick Constantin in count two. Constantin alone was indicted in count one for a separate violátion of La. R.S. 14:62.2. He pleaded guilty as charged to both counts, and was sentenced to six years at hard labor on each count, to run concurrently.

. FN6. LSA-C.Cr.P. art. 795(C): No peremptory challenge made by the state or the defendant shall be based solely upon the race of the juror. If an objection is made that the state or defense has excluded a juror solely on the basis of race, and a prima facie case supporting that objection is made by the objecting party, the court may demand a satisfactory racially neutral reason for the exercise of the challenge, unless the court is satisfied that such reason is apparent from the voir dire examination of the juror. Such demand and disclosure, if required by the court, shall be made outside of the hearing of any juror or prospective juror.

. See Miller-El v. Dretke, 545 U.S. 231, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005), where the Court stated that “the rule in Batson provides an opportunity to the prosecutor to give the reason for striking the juror, and it requires the judge to assess the plausibility of that reason in light of all evidence with a bearing on it.” Miller-El, 545 U.S. at 251-52, 125 S.Ct. at 2331-2332.

. Defendant did not file a writ application with the Louisiana Supreme Court to seek a *79 review of this court’s ruling.

. Defendant makes no specific reference to a violation of his right to Equal Protection under the Fourteenth Amendment.